J-S44026-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| RICHARD DAVIS, | |
| Appellant | No. 2264 EDA 2016 |

Appeal from the Judgment of Sentence June 21, 2016
In the Court of Common Pleas of Delaware County
Criminal Division at No(s): CP-23-CR-0006550-2015

BEFORE:  BENDER, P.J.E., SHOGAN and MUSMANNO, JJ.

MEMORANDUM BY SHOGAN, J.:                    **FILED SEPTEMBER 11, 2017**

Appellant, Richard Davis, appeals from the judgment of sentence of thirteen to twenty-six months of imprisonment entered in the Court of Common Pleas of Delaware County on June 21, 2016, following Appellant's conviction by a jury of possession of marijuana and possession of marijuana with intent to deliver (PWID"),[1] the two charged offenses.  We affirm.

The salient facts of this case are as follows:  On July 13, 2015, at approximately 3:50 p.m., Jeffrey Theobald, then a parole agent with the

---

[1] 35 P.S. §§ 780-113(a)(16) and (30), respectively.

Pennsylvania Board of Probation and Parole,[2] entered Taylor Terrace, a street in the City of Chester, Delaware County, and encountered Appellant, whom he recognized as one of the parolees he supervised. Agent Theobald had supervised Appellant for a year and knew that Appellant was on parole for PWID and a firearm violation. Agent Theobald watched as Appellant covered something in the trunk of his vehicle, which was stopped in the middle of the road. N.T., 2/23/16, at 5–8.

When Appellant entered his car and drove away, Agent Theobald followed him about one-half block, whereupon Appellant turned right, and Agent Theobald proceeded on to the house of the parolee he was scheduled to visit. Agent Theobald parked his car, waited to see if Appellant would circle around, and when he did not, the agent exited his vehicle. At that point, Agent Theobald again observed Appellant, who was now walking through a vacant lot holding a white plastic bag. Agent Theobald proceeded to the house of his parolee while he watched Appellant walk through the empty lot. N.T., 2/23/16, at 8–10.

Agent Theobald observed Appellant carry the white bag, walk to an overgrown bush, and then reappear without the bag. Agent Theobald decided to approach Appellant and called out to him. Agent Theobald

_____

[2] Agent Theobald currently is a criminal investigator with the Pennsylvania Department of Corrections Office of Special Investigations and Intelligence. N.T., 6/14/16, at 63.

- 2 -

approached Appellant, asked him what he was doing, and Appellant responded he was going to visit his cousin. Agent Theobald patted him down, asked Appellant about the bag, and placed Appellant in handcuffs. The agent went to the bush and retrieved the white bag, which contained a large "freezer style" Ziploc bag containing suspected, and ultimately confirmed, marijuana. Agent Theobald contacted City of Chester police, who arrived within ten to fifteen minutes. While waiting for police, Appellant asked Agent Theobald if he could "get rid of that for me." N.T., 2/23/16, at 13–16, 18.

Appellant was arrested on July 13, 2015, and charged as indicated. On December 21, 2015, Appellant filed a motion to suppress his statements to Agent Theobald and the marijuana. Suppression Motion, 12/21/15. On February 23, 2016, the court held a suppression hearing, at which Agent Theobald was the sole witness. On April 6, 2016, the suppression court granted the motion in part, suppressing statements made to Agent Theobald,[3] and denied the motion to suppress the physical evidence the agent seized from the abandoned white bag. Order, 4/6/16, at 1. The suppression court issued detailed findings of fact and conclusions of law. *Id*. at 1–7.

---

[3] The Commonwealth has not appealed suppression of the statements made to Agent Theobald; thus, that issue is not before us.

A jury trial commenced on May 10, 2016. The jury indicated that it was deadlocked on May 12, 2016, and the trial court declared a mistrial. Appellant was retried on June 14, 2016, and on June 15, 2016, the jury found Appellant guilty of both charges. The trial court sentenced Appellant on June 21, 2016, to thirteen to twenty-six months of imprisonment for PWID; the court held that the possession-of-marijuana conviction merged for purposes of sentencing. Appellant filed a timely notice of appeal. Trial counsel withdrew his representation, and present counsel entered his appearance on Appellant's behalf. Both Appellant, by present counsel, and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following issues on appeal:

> *Whether there was no reasonable suspicion for the parole officer's warrantless search of Appellant therefore Article I, Section 8 of the Pennsylvania Constitution requires exclusion of the tainted evidence. Commonwealth v. Arter, 63 MAP 2015, 2016 WL 7449357 (Pa. Dec. 28, 2016)*[.]
>
> *Whether the Trial Court's suppression of [Appellant's] statements based on Miranda calls for the controlled substances to be suppressed because the same seizure giving rise to the custodial finding began when [Appellant's] P.O., whom he recognized, started after him.*

Appellant's Brief at 5. We address the issues in tandem.

Appellant assails the suppression court's refusal to suppress the marijuana found in the white bag that Appellant secreted in the bush. In his first claim, Appellant contends the record lacks evidence of reasonable suspicion supporting Agent Theobald's stop and search of Appellant.

Referring to the statute detailing the supervisory authority of probation and parole officers, Appellant inarticulately suggests the statute can be ignored because the pat-down search was for weapons, not suspicion of a violation. Appellant's Brief at 10–12. In his second claim, Appellant maintains that the court's suppression of statements pursuant to **Miranda v. Arizona**, 384 U.S. 436 (1966), required suppression of the physical evidence as well "because the same seizure giving rise to the custodial" interrogation tainted the seizure of the abandoned bag of marijuana. Appellant's Brief at 16–18.

The Commonwealth responds that Agent Theobald maintained his supervisory relationship with Appellant, authorized by statute,[4] and had reasonable suspicion to believe that Appellant possessed contraband or other evidence of violations of the conditions of his supervision. Commonwealth's Brief at 14. It further maintains that Appellant freely abandoned the white bag and "could not have retained 'a reasonable expectation of privacy' when he left the bag in the bush." **Id**. at 22.

_____

[4] The Commonwealth has inexplicably referenced a nonexistent citation in its brief; its reproduction of the content of the statute, however, reflects the correct and relevant law at 61 Pa.C.S. § 6153. Commonwealth's Brief at 14. We note that Appellant's reference to 42 Pa.C.S. § 9912 also is incorrect because that statute details the supervisory authority of county probation officers. Here, Agent Theobald testified that he was an agent for the Pennsylvania Board of Probation and Parole at that time, and Appellant was on parole for possession with intent to deliver a controlled substance and a firearms violation. N.T., 2/23/16, at 8. Therefore, Agent Theobald derived his supervisory authority from Section 6153. Nevertheless, the statutes contain substantially similar provisions with regard to the issues raised herein.

When this Court addresses a challenge to the denial of a suppression motion:

> we are limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, the appellate court is bound by those findings and may reverse only if the court's legal conclusions are erroneous. Where ... the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of the courts below are subject to plenary review. **Commonwealth v. Jones**, 121 A.3d 524, 526–27 (Pa. Super. 2015) (citation omitted). When reviewing the suppression court's rulings, we consider only the suppression record. **In re L.J.**, 622 Pa. 126, 79 A.3d 1073, 1085 (2013) ("it is inappropriate to consider trial evidence as a matter of course, because it is simply not part of the suppression record, absent a finding that such evidence was unavailable during the suppression hearing").

**Commonwealth v. Parker**, 161 A.3d 357, 361–362 (Pa. Super. 2017) (footnote omitted).

"The Fourth Amendment of the Federal Constitution and Article I, Section 8 of the Pennsylvania Constitution protect individuals from unreasonable searches and seizures." **Commonwealth v. Walls**, 53 A.3d 889, 892 (Pa. Super. 2012).

> In Fourth Amendment jurisprudence, there are three categories of interactions between citizens and the police:

> The first category is a "mere encounter" (or request for information) which need not be supported by any level of suspicions, but carries no official compulsion to stop or respond. The second, an "investigative detention," must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

*Commonwealth v. Gutierrez*, 36 A.3d 1104, 1107 (Pa. Super. 2012) (citation omitted).

> Reasonable suspicion is a less stringent standard than probable cause necessary to effectuate a warrantless arrest, and depends on the information possessed by police and its degree of reliability in the totality of the circumstances. In order to justify the seizure, a police officer must be able to point to specific and articulable facts leading him to suspect criminal activity is afoot. In assessing the totality of the circumstances, courts must also afford due weight to the specific, reasonable inferences drawn from the facts in light of the officer's experience and acknowledge that innocent facts, when considered collectively, may permit the investigative detention.

*Commonwealth v. Parker*, 161 A.3d 357, 362 (Pa. Super. 2017) (citing

*Commonwealth v. Clemens*, 66 A.3d 373, 379 (Pa. Super. 2013) (citation

omitted)).

The suppression court determined that because Appellant freely abandoned the marijuana in the overgrown bush before any contact with Agent Theobald, "[t]he objective facts show that [Appellant] could not have retained 'a reasonable expectation of privacy' when he left the bag in the

bush." Suppression Court Opinion, 4/6/16, at 6 (citing **Commonwealth v. Shoatz**, 366 A.2d 1216 (Pa. 1976)). We agree.[5]

Proper disposition of this case necessarily involves the authority of parole officers, in pertinent part, as follows:

> **(a) General rule.**--Agents are in a supervisory relationship with their offenders. The purpose of this supervision is to assist the offenders in their rehabilitation and reassimilation into the community and to protect the public. . . .
>
> **(b) Searches and seizures authorized.**--
>
> (1) Agents may search the person and property of offenders in accordance with the provisions of this section.
>
> (2) Nothing in this section shall be construed to permit searches or seizures in violation of the Constitution of the United States or section 8 of Article I of the Constitution of Pennsylvania.
>
> **(c) Effect of violation.**--No violation of this section shall constitute an independent ground for suppression of evidence in any probation and parole or criminal proceeding.
>
> **(d) Grounds for personal search.**--
>
> (1) A personal search of an offender may be conducted by an agent:
>
>> (i) if there is a reasonable suspicion to believe that the offender possesses contraband or other evidence of violations of the conditions of supervision;
>>
>> (ii) when an offender is transported or taken into custody; or

---

[5] We note as well that Appellant concedes that the marijuana properly was suppressed if "abandonment controls." Appellant's Brief at 16.

(iii) upon an offender entering or leaving the securing enclosure of a correctional institution, jail or detention facility.

(2) A property search may be conducted by an agent if there is reasonable suspicion to believe that the real or other property in the possession of or under the control of the offender contains contraband or other evidence of violations of the conditions of supervision.

(3) Prior approval of a supervisor shall be obtained for a property search absent exigent circumstances. No prior approval shall be required for a personal search.

\* \* \*

(6) The existence of reasonable suspicion to search shall be determined in accordance with constitutional search and seizure provisions as applied by judicial decision. In accordance with such case law, the following factors, where applicable, may be taken into account:

(i)    The observations of agents.

(ii)   Information provided by others.

(iii)  The activities of the offender.

iv)   Information provided by the offender.

(v)   The experience of agents with the offender.

(vi)  The experience of agents in similar circumstances.

(vii)  The prior criminal and supervisory history of the offender.

(viii) The need to verify compliance with the conditions of supervision.

61 Pa.C.S. § 6153.

In the instant case, Agent Theobald, while in the course of his duties, was going to visit a parolee, not Appellant. While *en route*, he observed Appellant, who he recognized as another parolee he supervised, stopped in the middle of the road, appearing to search for something in the trunk of his car. Appellant drove off without intervention by Agent Theobald, who continued to his intended destination. As the agent exited his vehicle and approached his destination, he saw Appellant again, now walking through an empty lot, carrying a bag. As Agent Theobald watched, Appellant walked behind an overgrown bush and left the bag in the bush. Agent Theobald's view of Appellant was a mere chance encounter that initially arose on a public street. The agent did not need any level of suspicion to observe Appellant's behavior in public. By the time Agent Theobald called out to Appellant, approached him, patted him down, and handcuffed him, Appellant had previously discarded the bag.

As the trial court noted, abandoned property that is not coerced by illegal police action, "may be obtained by police and used for evidentiary purposes." Suppression Opinion, 4/6/16, at 6; *see also Commonwealth v. Ibrahim*, 127 A.3d 819, 825 (Pa. Super. 2015) ("As a general rule, when a person abandons property, the police may recover that property and use it as evidence against a defendant. However, the abandonment cannot be the result of illegal police conduct"), *appeal denied*, 138 A.3d 3 (Pa. 2016). Indeed, in *Commonwealth v. Tillman*, 621 A.2d 148 (Pa. Super. 1993),

police officers on routine patrol observed the defendant drop a container later found to contain fifteen vials of cocaine. This Court determined that evidence abandoned before police officers "showed any interest" in the defendant was improperly suppressed as fruit of the poisonous tree. *Id*. at 150.

When analyzing the principles of abandonment of property, this Court has reasoned as follows:

> In *Commonwealth v. Shoatz*, 469 Pa. 545, 366 A.2d 1216 (1976), our Supreme Court delineated the test employed to determine whether an abandonment has occurred:
>
> > Abandonment is primarily a question of intent, and intent may be inferred from words spoken, acts done, and other objective facts. All relevant circumstances existing at the time of the alleged abandonment should be considered. The issue is not abandonment in the strict property-right sense, *but whether the person prejudiced by the search had voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search*.
>
> *Id*., 469 Pa. at 553, 366 A.2d at 1220 (emphasis added).
>
> *Commonwealth v. Johnson*, 431 Pa. Super. 291, 294-96, 636 A.2d 656, 658 (1994) (quotation marks and some internal citations omitted). In other words, "[a]bandonment can be established where an individual's surrender of possession of the property constitutes such a relinquishment of interest in the property that a reasonable expectation of privacy may no longer be asserted." *Johnson*, 636 A.2d at 658-659.

*Commonwealth v. Clark*, 746 A.2d 1128, 1134 (Pa. Super. 2000). We agree with the suppression court that Appellant could not have retained a

reasonable expectation of privacy in the white bag once he secreted and abandoned the marijuana in the bush. Suppression Court Opinion, 4/6/16, at 6 (citing **Shoatz**, 366 A.2d at 1219).

Additionally, there is no merit to Appellant's suggestion that Agent Theobald's observation of Appellant's actions sparked a "forced abandonment" by Appellant. Appellant's Brief at 17. While it may be true that Appellant indeed recognized that Agent Theobald was aware of Appellant's presence, and Appellant "dropped the bag to avoid the parole violation of actual possession of a controlled substance," Appellant's Brief at 18, that scenario does not describe a forced abandonment under the law. **Commonwealth v. Pizarro**, 723 A.2d 675, 680 (Pa. Super. 1998) ("mere approach by a law enforcement official does not amount to police coercion requiring suppression of evidence abandoned by defendant"). Indeed, we have stated that fear of detection and "sensitivity to the risk of police detection does not establish that [an] abandonment was forced." **Id**. at 680.

In **Commonwealth v. Taylor**, 33 A.3d 1263 (Pa. Super. 2011), undercover police officers were patrolling an area in an unmarked car and observed the appellant and another man sitting on a wall. The appellant was holding a potato chip bag. As the officers approached, the appellant crumpled the bag and put it down to his side, and then tossed the bag to the ground. At that point, the officers exited their vehicle and identified

themselves as police officers. In addressing the appellant's issue on appeal that he had been forced to abandon the physical evidence and was illegally detained, this Court stated: "While appellant may have felt uncomfortable being watched by three people in a car that he knew to be a police vehicle, we cannot find such amounted to police coercion. . . . Appellant discarded the potato chip bag at his own volition." *Id*. at 1286.

Similarly, in the instant case, we conclude that the record is devoid of any evidence that Agent Theobald's conduct forced Appellant to abandon the marijuana. Moreover, the abandonment, which occurred substantially before the agent approached and detained Appellant, was not fruit of the poisonous tree. Agent Theobald's subsequent detention, pat down, and custodial detention without *Miranda* warnings had no impact on Appellant's prior voluntary abandonment of the marijuana. Despite the trial court's suppression of Appellant's statements because they resulted from a custodial interrogation absent *Miranda* warnings, the marijuana was seized independently of that custodial conduct in that it had been abandoned prior to Agent Theobald's approach of Appellant. As stated by the suppression court:

> Here, the physical evidence of the white plastic bag did not come to light by exploitation of illegality of statements obtained from [Appellant]. Agent Theobald did not retrieve the bag from the bush because of any statements made by [Appellant]. On the contrary, the Agent observed the bag prior to any statements made by [Appellant]. Therefore, the suppression of [Appellant's] statements is a complete and sufficient remedy for the *Miranda* violation.

Suppression Court Opinion, 4/6/16, at 7. Appellant's abandonment was not caused by any unlawful or coercive action by Agent Theobald. Thus, we conclude Appellant's issues lack merit.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/11/2017